IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-76,437






EX PARTE CLAUS DETREF THILES, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM DALLAS COUNTY






 Price, J., delivered the opinion of the court in which Meyers, Womack,
Johnson, Keasler, Hervey and Cochran, JJ., joined. Keller, P.J., filed a
concurring opinion.


O P I N I O N



 This is a post-conviction application for writ of habeas corpus brought pursuant to
Article 11.07. (1) We filed and set this application in order to address the applicant's claim that
he is entitled to credit against his prison sentence for a lengthy period of time during which
he was allowed to remain at large on an appellate bond even though, unbeknownst to him,
the appellate mandate affirming his conviction had long since issued. Should he receive the
credit he now seeks, the applicant will have discharged his sentence and would be entitled
to immediate release. We will grant relief. 

FACTS AND PROCEDURAL POSTURE

 The following procedural history is based on stipulations made at the writ of habeas
corpus hearing. The applicant, Claus Detref Thiles, was indicted on July 7, 1981, and
convicted on April 19, 1982, in Dallas County for aggravated sexual assault. He was
sentenced to sixteen years in prison. He entered the Texas prison system on April 22, 1982,
and filed his notice of appeal on July 12, 1982. The applicant appealed to the Fifth Court of
Appeals in Dallas, and on November 19, 1984, that court reversed the conviction for a
defective plea admonishment. The State then filed a petition for discretionary review, and
on January 11, 1985, the applicant had an appeal bail set by this Court. (2) On January 25,
1985, the applicant was bench warranted back to the Dallas County Jail. Southwest Bonding
Company filed his appeal bond, and the applicant was released from jail on that bond. The
terms of the appeal bond did not include conditions requiring the applicant to report to the
bondsman, or to make an appearance in the trial court without first being called to appear.

 On February 19, 1986, this Court reversed the judgment of the court of appeals and
remanded the cause to that court to consider the applicant's remaining grounds of error not
previously determined on original submission. On July 14, 1987, the court of appeals issued
its final opinion in the applicant's case, affirming the conviction. The court of appeals's
mandate arrived at the trial court on October 20, 1987; however, no warrant issued on this
mandate until November 16, 2007. No one from the Dallas County District Attorney's
Office, officials of the Dallas County Criminal District Court Number 5, the Dallas County
Sheriff's Office, or the Southwest Bonding Company took any action to have the applicant's
bond forfeited from the time of his release on this appeal bond, January 25, 1985, until 2009. 
Nor was he ever called to appear before the trial court from the time of the issuance of the
appellate mandate, October 20, 1987, until 2007, when the warrant on the mandate finally
issued.

 The applicant was initially stopped and arrested by police near his home in Missouri
on May 21, 2009, for DWI, although that charge was later dismissed. Once the police
determined that the applicant had an outstanding 2007 warrant from Dallas County, he was
transferred from Missouri to Texas and is now serving his sentence in the Texas Department
of Criminal Justice (TDCJ). From the time the applicant was released on the appeal bond,
January 25, 1985, until the date of his arrest May 21, 2009, he accrued no additional criminal
convictions. He remained a productive member of society during that time, lived openly
under his own name, and made no effort to conceal his whereabouts.

 The applicant has now filed this post-conviction application for writ of habeas corpus
seeking relief. In his writ application he alleges, inter alia, that he was "constructively
released" from custody, erroneously and through no fault of his own, and is therefore entitled
to his street time from the time that the mandate of affirmance was issued in his case in
October 1987. The State agrees that applicant is entitled to relief on this claim. After
holding a live evidentiary hearing, the trial court adopted the State's proposed findings of
fact and conclusions of law and recommended that this Court grant the applicant relief. The
trial court concluded that the applicant was, in effect, erroneously released and is entitled to
day-for-day credit on the remainder of his sentence, which would then be immediately
discharged. For the reasons explained below, we agree with the applicant, the State, and the
trial court that the applicant is entitled to relief and should be given day-for-day credit for the
rest of his sentence. Because this credit fully discharges his sentence, we will order his
immediate release.

ANALYSIS

 The applicant relies by analogy to a long line of cases in which convicted inmates
were inadvertently released from custody when they should have remained serving their
legitimately imposed sentences. (3) In such cases of erroneous release, we have consistently
held that "an individual is entitled to time credit toward the expiration or discharge of a
sentence when the individual, through no fault of his or her own, was erroneously released
from custody by the State." (4) It would be unreasonable, we have observed, and would defy
human nature to expect one who has been erroneously released from custody to insist to the
authorities that he should be re-incarcerated. (5)

 The instant case is not, strictly speaking, a case of erroneous release. Here, the
applicant was legitimately released on an appeal bond after his conviction had been reversed
by the court of appeals. But the applicant should have been re-incarcerated once his
conviction was final in 1987. Unfortunately, a warrant for his arrest after the appellate
mandate issued was not signed until 2007, twenty years later. Both the applicant and his wife
testified at the writ hearing that, during those twenty years, the applicant was never notified
that his sentence had been affirmed and that the appellate mandate had issued. In the
meantime, the applicant remarried, moved from state to state, started up a new business
venture and became a productive member of the various communities in which he lived. He
argues that, through no fault of his own, he was allowed to remain at large for twenty years
when he could have been in custody serving time on his sentence, which he would have
discharged long ago.

 There is another line of Texas cases that generally governs whether time credit should
be allowed for inmates who are inadvertently permitted to remain at large for a period of time
following an appellate mandate of affirmance. In these cases, we have held that when the
defendant was out on bond pending appeal of a judgment of conviction and the conviction
was affirmed, but later it was noticed that the applicant was never taken into custody, the
applicant was not entitled to be relieved from serving the sentence and should not be given
credit against his sentence for the time that he was not in custody. (6) These cases all seem to
hinge, however, on whether the applicant ever became aware that his sentence had been
affirmed on appeal and a capias issued for his arrest.

 In Ex parte Dunn, the applicant was out on an appeal bond when his sentence was
affirmed, and the clerk of the trial court did not enter a capias for his arrest after the
affirmance of his sentence until six years later when the trial court discovered the oversight. (7) 
Citing to previous cases dealing with terms and conditions set out in bonds, we held that the
applicant was not entitled to time credit from the date the mandate issued because he did not
comply with the terms of his appeal bond requiring him to appear before the convicting
court. (8) It is unclear from our opinion in Dunn whether the applicant knew his sentence had
been affirmed. But in each of the cases upon which we relied in Dunn, it was clear that the
applicants were aware that their sentences had been affirmed on appeal. (9) Although it is not
explicitly stated that Dunn knew his sentence had been affirmed, we implied that he did,
having taken pains in our opinion to point out that the applicants in the prior cases were all
aware that their convictions had been affirmed.

 The State, the applicant, and the trial court all agree that the principle of
reasonableness underlying the erroneous release cases should apply on the facts of this case,
and that the applicant should be granted the relief. We agree that this same principle should
apply, at least on the particular facts before us. Because of the inaction of the State, (10) the
applicant was never informed that a mandate of affirmance had issued in his case. He never
violated the conditions of his appellate bond, having never been called to appear before the
court upon the affirmance of his conviction on appeal. Instead, he was allowed to remain at
large erroneously, without his knowledge and through no fault of his own. Under these
particular circumstances, we agree with the parties and the trial court that the applicant is
entitled to day-for-day time credit from the time the appellate mandate issued to the time he
was finally arrested on the warrant. (11)

CONCLUSION

 Had the applicant been timely returned to custody following the issuance of the
appellate mandate of affirmance in 1987, his sentence would have discharged in
approximately 2001. We agree that the applicant is entitled to relief in the form of credit for
the time he was at large after the mandate issued and conclude that, with this credit toward
his sixteen-year sentence, he has served it in full and shall be immediately discharged from
the custody of TDCJ. A copy of this opinion shall be sent to TDCJ.

 It is so ordered.


DELIVERED: March 9, 2011

PUBLISH
1. Tex. Code Crim. Proc. art. 11.07.
2. 

 "If the defendant requests bail after a petition for discretionary review has been filed, the
Court of Criminal Appeals shall determine the amount of bail." Tex. Code Crim. Proc. art.
44.04(h).
3. 

 The most recent cases in this line include: Ex parte Hale, 117 S.W.3d 866, 873 (Tex. Crim.
App. 2003) (burglary sentence of habeas applicant who was twice erroneously released to mandatory
supervision ordered discharged when his period of supervision on erroneously granted mandatory
supervision expired); Ex parte Rowe, 277 S.W.3d 18, 19-20 (Tex. Crim. App. 2009) (habeas
applicant sentenced to a term of imprisonment in Texas was sent to Georgia to answer charges there,
then placed on probation in Georgia and never incarcerated pursuant to his Texas sentence, was
entitled to credit against his Texas sentence for time spent erroneously released); Ex parte Baker,
297 S.W.3d 256, 259 (Tex. Crim. App. 2009) (habeas applicant entitled to credit for time when he
was erroneously released after completing a sentence in Harris County when he should have
remained in confinement to complete another sentence imposed by Gillespie County).
4. 

 Ex parte Baker, supra, at 258; see also Ex parte Hale, supra, 869-72.
5. 

 Ex parte Rowe, supra, at 20; Ex parte Baker, supra, at 259.
6. 

 Ex parte Dunn, 976 S.W.2d 208 (Tex. Crim. App. 1998); Ex parte Francis, 510 S.W.2d 345
(Tex. Crim. App. 1974); Ex parte Rayburn, 146 Tex. Crim. 204, 172 S.W.2d 505 (1943); Ex parte
Underwood, 94 Tex. Crim. 157, 248 S.W. 551 (1923).
7. 

 976 S.W.2d at 209-10.
8. 

 The bond required the applicant to appear before the convicting court "from day to day and
from term to term of the same and not depart without leave of the Court in order to abide the
judgment of the Court of Criminal Appeals of the State of Texas." Id. at 210-11.
9. 

 Ex parte Francis, supra, at 346-47 (applicant failed to take make appearance in trial court
in accordance with his appellate bond when he learned that his conviction had been affirmed); Ex
parte Rayburn, supra, at 205-206 (after learning of the affirmance of his conviction, applicant
presented himself for admittance to the penitentiary instead of to trial court, as per the conditions of
his appellate bond); Ex parte Underwood, supra, at 158-59 (applicant knew his conviction was
affirmed on appeal because he paid the fine at that time, but because he made no appearance before
trial court in accordance with the appellate bond, he was not entitled to credit for time spent at large
when he was not immediately taken into custody to serve jail sentence).
10. TDCJ made numerous attempts to determine the applicant's location after the mandate had
issued, but most of those queries went unanswered. The judge of the trial court received letters of
inquiry from TDCJ as to the applicant's status and whereabouts in September, October, and
December of 1991, but there is no record of any response to those letters from the trial court. TDCJ
also sent a letter of inquiry to the Dallas County District Attorney's Office in January of 1992, but 
there is also no record of any response to this letter. TDCJ sent further letters of inquiry to the judge
of the trial court in May and July of 1992. The court coordinator responded to the July letter that
there was an outstanding warrant for the applicant, but in reality, no record of any warrant for the
applicant existed at that time. Additionally, at no point between 1985 and 1992 did the trial court
or any other entity inform Southwest Bonding Company that the applicant's conviction had been
affirmed and that a mandate had issued in the case. After yet another inquiry from TDCJ, a warrant
finally issued for the applicant in November 2007 and remained in effect until the applicant's
eventual arrest for DWI in 2009.
11. Presiding Judge Keller would also grant the applicant relief, but on a different theory. She
would hold that, because the applicant's conviction was reversed by the court of appeals, he no
longer stood convicted and should therefore be "relieved from the duty to enquire further into the
outcome of the appellate proceedings." Concurring opinion, at 3. But we do not read the case law
necessarily to impose any such duty to enquire--under any circumstances. The appellate-bond cases
seem simply to hold that when an appellant does discover, by whatever means, that his conviction
has ultimately been affirmed on appeal, he has a duty to present himself to the convicting court, in
accordance with his bond, for appropriate disposition in keeping with the ultimate appellate mandate. 
This duty is not contingent on whether an intermediate appellate court affirmed or reversed his
conviction. When an intermediate appellate court in Texas reverses a criminal conviction, that
reversal is subject to being overturned by this Court on a State's petition for discretionary review. 
That the intermediate court reversed the conviction does not mean that an appellant who is
subsequently released by this Court on an appellate bond under Article 44.04(h), will never have to
present himself to the convicting court--quite the contrary, he most certainly will if this Court
reinstates his conviction on discretionary review. In the instant case, had the applicant ever received
actual notice in any form that the trial court's judgment of conviction was ultimately reinstated by
this Court, we do not think (nor do we understand Judge Keller to advocate) that it would have been
appropriate to relieve him of the obligations of the appellate bond we set for him just because he was
not officially notified of that ultimate disposition. This applicant never received any form of notice.